## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES WILLIAM PEARSON,

                   Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

CIVIL ACTION NO. 3:19-CV-00973

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action for disability benefits under Title II of the Social Security Act. Pending before the Court is a motion for reconsideration filed by Defendant, the Commissioner of Social Security (the "Commissioner"). (Doc. 23). The Commissioner seeks reconsideration of the Court's April 14, 2020, Order remanding the matter to the Commissioner for an award of benefits. (Doc. 22). For the following reasons, Defendant's Motion for Reconsideration shall be denied.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Charles William Pearson, Jr., ("Pearson") filed for Disability Insurance Benefits under Title II of the Social Security Act on November 7, 2011. (Doc. 8-6, at 2-8). In his application, Pearson alleges he is disabled due to narcolepsy. (Doc. 8-7, at 6). After his claim for benefits was denied by an ALJ on February 12, 2013, and the Appeals Council denied review, Pearson filed a complaint in this court on July 22, 2014. (Doc. 8-2, at 2-6, 55, 58; Doc. 8-11, at 24-35). On May 22, 2015, the Commissioner filed a Motion for Remand

after concluding that the case would benefit by further evaluation of the record and re-evaluation of Pearson's claim. (Doc. 8-11, at 36-42).

After a second hearing, Pearson's claim was again denied by an ALJ on March 18, 2016. (Doc. 8-10, at 13-22, 28-52). He filed a second action in this Court on November 18, 2016, and the District Court adopted the undersigned's subsequent Report and Recommendation that the ALJ had failed to adhere to the Appeals Council's remand order. (Doc. 8-18, at 34, 44). Upon remand, Pearson again appeared before an ALJ on December 17, 2018. (Doc. 8-17, at 41). The ALJ again denied his claim, ruling that he was capable of performing a full range of work at all exertional levels with the only nonexertional limitation of avoiding concentrated exposure to hazards. (Doc. 8-17, at 10, 15-16). Pearson then filed the instant action on June 6, 2019. (Doc. 1). On April 14, 2020, the Court directed the Commissioner to award Pearson benefits after finding that the ALJ failed to follow the directions of the Court and because Pearson's nap requirement was not contradicted by substantial evidence yet was not included in his RFC. (Doc. 21; Doc. 22).  The Commissioner filed this Motion to Amend the Order, and the Brief in Support, on May 4, 2020. (Doc. 23; Doc. 24). Pearson filed a Brief in Opposition to the Motion on May 15, 2020. (Doc. 27). Accordingly, this matter is now ripe for disposition.

## II.    MOTION FOR RECONSIDERATION STANDARD

A motion for reconsideration is a device of limited utility and may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert. denied*, 476 U.S. 1171, 106 (1986). In order to prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available previously; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "With regard to the third ground, . . . any litigant considering bringing a motion to reconsider . . . should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. 1992) (citation omitted). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (internal citation omitted).

## III.   DISCUSSION

The Commissioner bases his motion for reconsideration on an alleged error of law or fact in the Court's Opinion. (Doc. 24, at 3). Specifically, the Commissioner contends that the ALJ did not deviate from the Court's prior remand order and that the Court erred in finding that a normal and regular work schedule was impossible due to Pearson's need to nap. (Doc. 24, at 3, 14). Pearson counters that the Commissioner is attempting to improperly relitigate matters which have already been resolved by the Court and that the ALJ's RFC was not supported by substantial evidence. (Doc. 27); *see Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 429 (E.D. Pa. 2014) ("A motion for reconsideration may not . . . be used to give a litigant a 'second bite at the apple' as to an argument on which it previously did not succeed.").

### A.   THE DECISION TO OVERTURN THE COMMISSIONER'S DENIAL OF BENEFITS

In its Order reversing the ALJ's decision, the Court found two reasons to do so: (1) the ALJ deviated from the Court's prior order, and (2) the ALJ did not include Pearson's need

to nap for at least 15 to 20 minutes in his RFC and did not identify substantial evidence contradicting this requirement. (Doc. 21, at 13). The Commissioner asks the Court to reconsider both of these findings and the Court takes them up in turn. (Doc. 24).

> 1.   There is no manifest error of law or fact concerning the Court's holding that the ALJ deviated from the remand order.

In reversing the Commissioner's denial of benefits, the Court determined that the ALJ failed to abide by the Court's May 16, 2018, Order remanding the case for further proceedings. (Doc. 21, at 10-13). In that order, the Court directed the Commissioner to remedy two outstanding questions which the Court determined were raised by the Appeals Council in its review of the ALJ's decision: (1) Considering that Dr. Michalek referred Pearson to Dr. Royer for diagnostic testing, why did the ALJ conclude that Dr. Michalek's December 2012 opinion "contains 'no apparent physical examinations or diagnostic testing by [the] Neurology Center noting any objective medical abnormalities;'" and (2) why did the ALJ not address Dr. Michalek's opinion that Pearson required intermittent naps during his working hours for his safety due to his narcolepsy and poor response to medication. (Doc. 8-18, at 44). The Court explained that these issues were "precisely what the Appeals Council noted that ALJ Myers failed to address in the first hearing decision." (Doc. 8-18, at 44). Noting that the ALJ must indicate what evidence was rejected in addition to the evidence which supports the RFC, the Court held, "With this failure to acknowledge and analyze probative evidence, we cannot conclude that ALJ Guida's consideration of Dr. Michalek's opinion meets the substantial evidence standard." (Doc. 8-18, at 44-45).

The Appeals Council had provided direction and the Court determined that ALJ Guida had not "adequately complied with the Appeals Council's directive on this particular issue." (Doc. 8-18, at 45). The Social Security Administration "require[s] adherence to the

remand orders of the Appeals Council," and so the ALJ had "committed error by not following the mandate of the Appeals Council." (Doc. 8-18, at 45). For these reasons, the Court vacated and remanded Pearson's case "for further consideration in light of the Appeals Council's October 13, 2015, remand order." (Doc. 8-18, at 45).

The Commissioner now submits that the Court in its May 16, 2018, decision misunderstood and wrongly interpreted the directives of the Appeals Council. (Doc. 24, at 16-17). According to the Commissioner, the Appeals Council "noted that Dr. Michalek submitted a letter dated December 20, 2012 stating that Pearson would require intermittent naps during his working hours for safety, and that ALJ Myers failed to address that letter in his decision." (Doc. 24, at 15). The Appeals Council, therefore, took issue with ALJ Myers's failure to address this letter *at all*, whereas the Court incorrectly found that the ALJ failed to abide by the Appeals Council's directive when he discussed but *discounted* that opinion. (Doc. 24, at 16-17).

First, the May 16, 2018, Order by this Court controls the law of the case. As acknowledged by the Commissioner, after the Report and Recommendation was filed on February 22, 2018, the Commissioner had the opportunity to – and did – submit objections. (Doc. 8-18, at 45-47). The Commissioner's objections were overruled by the District Court, which adopted the Report and Recommendation in full. (Doc. 8-18, at 47-48). As such, the determinations contained in the Report and Recommendation filed on February 22, 2018, are the law of the case and mandated the conduct of the ALJ upon remand. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (holding that upon remand the Secretary must follow the directive of the Court which issued the remand).

Even if the Court's May 16, 2018, holding could be changed, the District Court's interpretation of the Appeals Council's directive does not constitute clear error of fact. *See Max's Seafood Café,* 176 F.3d at 677. The Appeals Council's remand order directed the ALJ to "give further consideration to the treating and nontreating source opinions, including the opinions of Dr. Michalek and Dr. Royer, pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (Doc. 8-11, at 46). The Commissioner contends that the Court subsequently took issue with ALJ Guida discussing but *discounting* Dr. Michalek's December 20, 2012, opinion, even though the ALJ needed only to discuss it to abide by the Appeals Councils' remand instructions. (Doc. 24, at 16-17). The Court, however, found that the ALJ *did not discuss* an important facet of the December 20, 2012, opinion: "ALJ Guida did not address Dr. Michalek's opinion that Mr. Pearson required intermittent naps during his working hours for his safety due to his narcolepsy and poor response to medication. This is precisely what the Appeals Council noted that ALJ Myers failed to address in the first hearing decision." (Doc. 8-18, at 44). Indeed, review of ALJ Guida's decision reveals no mention of Dr. Michalek's December 20, 2012, opinion that Pearson would require intermittent naps during his working hours. (Doc. 8-10, at 19-20). The Court held that the ALJ's "failure to acknowledge and analyze" such probative evidence constituted a failure to meet the substantial evidence standard. (Doc. 8-18, at 44-45). As such, the Court did not clearly err in interpreting the Appeals Council's remand instructions.

The Commissioner also asserts that the Court's determination in its most recent Order that ALJ Guida "erred in not abiding by the Court's most recent remand order" is deserving of reconsideration. (Doc. 24, at 17). Both the Commissioner and the Court acknowledge that

ALJ Guida addressed Dr. Michalek's December 20, 2012, opinion in his most recent decision.[1] (Doc. 21, at 13; Doc. 24, at 18). However, the Commissioner asserts that the Court committed clear error in remanding the case for the ALJ's failure to explain "why [he] came to the conclusion that Dr. Michalek's December 2012 opinion was that no physical examination or diagnostic testing by the Neurology Center noted any objective abnormalities, especially considering that Dr. Michalek referred Pearson to Dr. Royer for diagnostic testing." (Doc. 24, at 18-20). The Commissioner avers that the ALJ need not have explained such conclusions in his most recent decision because the ALJ did not conclude that no physical examination or diagnostic testing by the Neurology Center noted any objective medical abnormalities. (Doc. 24, at 18) (quoting (Doc. 21, at 11)).

Though the ALJ did not restate his prior decision word-for-word, the Court determined that his conclusion that "Dr. Michalek [in her 2012 opinions] indicated no treatment findings on her part that supported a such a [sic] significant change from her opinion letter of January 12, 2009 [noting that Pearson could perform all essential duties and responsibilities except that he may travel with limitations]" was effectively the same as his prior conclusion (that Dr. Michalek's December 2012 opinion was that no physical examination or diagnostic testing by the Neurology Center noted any objective abnormalities). (Doc. 21, at 12). These two statements suffer from the same flaw which the Court, on May 16, 2018, had ordered corrected: the assertion that Dr. Michalek formed her 2012 opinion despite noting no objective abnormalities, without mentioning that it was Dr. Michalek who referred Pearson to Dr. Royer for a neuropsychological evaluation "following

---

[1] The Court determined that the ALJ did not identify substantial evidence contradicting this opinion. (Doc. 21, at 13).

reports of cognitive difficulties and a diagnosis of narcolepsy." (Doc. 8-17, at 13-14; Doc. 8-18, at 44; Doc. 21, at 12). The Court in 2018 held that the ALJ was required to address that Dr. Michalek referred Pearson to Dr. Royer for diagnostic testing in order to meet the substantial evidence standard. (Doc. 8-18, at 44-45). On remand, the ALJ again failed to address this probative evidence, a point which the Commissioner does not dispute in the instant Motion.[2] (Doc. 8-17, at 13-14; Doc. 24, at 18-20). In 2018, the Court held that this violated the Appeals Council's direction to "give further consideration to the opinion of Dr. Michalek, pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given." (Doc. 8-18, at 44-45). The same holds true today. (Doc. 21, at 11-13).

The Commissioner fails to establish that the Court's holding that the ALJ deviated from the prior remand order was a clear error of law or fact. As such, the Commissioner's Motion shall not be granted on that ground.

> 2. <u>There is no manifest error of law or fact concerning the Court's determination that Dr. Michalek's opinion was not contradicted.</u>

As noted by the Commissioner, the Court determined that the ALJ did not identify substantial evidence contradicting Dr. Michalek's 2012 opinion that Pearson "requires intermittent naps during his working hours for his safety." (Doc. 21, at 13; Doc. 24, at 3). The Court came to this conclusion by noting the ALJ's reliance on records indicating some degree of napping. (Doc. 21, at 13). The Court decided that the evidence used by the ALJ did not

---

[2] The ALJ's discussion of Dr. Royer's report is not to be confused with the ALJ's failure to address that Dr. Michalek made the decision to refer Pearson to Dr. Royer for diagnostic testing. The latter is what the ALJ neglected to address in contravention of the Court's 2018 order. (Doc. 8-18, at 44).

actually contradict Dr. Michalek's opinion, and yet the RFC did not include a limitation regarding Pearson's need to nap. (Doc. 21, at 13).

The Commissioner contends that "the records, however, could properly be read to contradict that conclusion, and the ALJ was permitted to find otherwise." (Doc. 24, at 3). He contends that the treatment note used by the ALJ to counter Dr. Michalek's opinion stated that Pearson only admitted to napping 15-20 minutes per day, rather than stating he *required* such naps. (Doc. 24, at 6). The Commissioner additionally submits that the same treatment note stated that Pearson denied dozing and reported that his hypersomnia had resolved with Adderall.[3] (Doc. 24, at 6).

As Pearson's treating neurologist, Dr. Michalek's opinion was entitled to controlling weight as long as it was well-supported and uncontradicted. *See Tilton v. Colvin*, 184 F. Supp. 3d 135, 142 (M.D. Pa. 2016). *Tilton* mandates that her opinion that Pearson needed intermittent naps during the work day stand as true as long as the ALJ did not cite evidence contradicting it or showing it was not well-supported. *See Tilton,* 184 F. Supp. 3d at 142. The ALJ purported to show that this opinion was not well-supported, writing that "this does not correspond to Dr. Michalek's records, above outlined, only noting that the claimant takes 1 nap for 1 hour in the afternoon." (Doc. 8-17, at 14). However, this statement cannot be

---

[3] Any other evidence used by the Commissioner in his Brief in Support to contradict Dr. Michalek's opinion is irrelevant because the ALJ addressed the opinion by citing only to Dr. Michalek's prior note that Pearson took one nap for one hour in the afternoon and Pearson's "subsequent reporting to Ms. Nguyen that hypersomnia was resolved, that he napped once a day for 15-20 minutes, and that he did not doze." (Doc. 8-17, at 14). Additional evidence cannot now be relied on as substantial evidence to support the ALJ's decision. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001) (noting that an ALJ's failure to consider all of the relevant and probative evidence cannot be subsequently rectified through an independent analysis using records not mentioned by the ALJ) (quoting *SEC v. Chenery Corporation*, 318 U.S. 80 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")).

interpreted to not support Dr. Michalek's opinion. Similarly, Pearson's "subsequent reporting to Ms. Nguyen that hypersomnia was resolved, that he napped once a day for 15-20 minutes, and that he did not doze," does not sufficiently contradict Dr. Michalek's opinion so as to deprive it of controlling weight. This reporting all occurred during the same visit with Ms. Nguyen; Pearson indicated that his hypersomnia was resolved with Adderall, he did not doze, *but he also napped for 15 to 20 minutes every day*. (Doc. 8-22, at 61). This all was occurring simultaneously. Therefore, it is impossible to know, and the ALJ does not have the liberty to predict, how Pearson's hypersomnia would manifest or whether Pearson would need to doze, without a 15 to 20-minute nap every day. A 15 to 20-minute nap, even if not explicitly "required," does not contradict Dr. Michalek's opinion that Pearson required intermittent naps during working hours for his safety. (*See* Doc. 8-9, at 67). To contradict Dr. Michalek's opinion, the ALJ would need to identify evidence that Pearson could work eight hours *without napping*. Because the ALJ only identified evidence that included at least a 15 to 20-minute nap, Dr. Michalek's opinion stands uncontradicted.[4] (Doc. 8-17, at 14). Therefore, as Pearson's treating neurologist, her opinion was entitled to controlling weight. *See Tilton,* 184 F. Supp. 3d at 142.

The Court's determination that the ALJ committed reversable error by not including a nap requirement in Pearson's RFC did not constitute a clear error of law or fact. The Commissioner's Motion shall not be granted on this ground.

---

[4] Moreover, the Commissioner's reliance on Dr. Blumenfeld's opinion is misplaced because a single non-treating medical opinion is insufficient to reject a treating source medical opinion. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008).

B. THE DECISION TO AWARD BENEFITS

After determining that the ALJ's decision should be reversed, the Court proceeded to conduct an inquiry into whether benefits should be awarded. (Doc. 21, at 13-28). After examining the evidence and testimony, and considering the Vocational Expert's opinion that Pearson's need for naps would not be allowed, the Court determined that a normal and regular work schedule would not be possible for Pearson. (Doc. 21, at 28). Thus, in light of the extended history of this case, which includes three remands, the Court ordered that benefits be rewarded. (Doc. 21).

The Commissioner now asserts that it was clear error for the Court to find that a normal and regular work schedule would not be possible absent a nap accommodation. (Doc. 24, at 3-14). The Commissioner cites Pearson's search for full-time employment, Dr. Schneider's note that Pearson would not fall asleep during the day as long as he was "involved with something," Pearson's ability to play golf and "drive for several hours at a time without falling asleep," Dr. Royer's report addressing depression rather than narcolepsy, and that Pearson maintained full-time work from July 2014 through July 2015. (Doc. 24, at 3-14).

Additionally, the Commissioner repeatedly suggests that the Court was obligated to defer to the ALJ's interpretation of the facts. (Doc. 24, at 3, 6-7, 9-11, 13-14). The Commissioner states that the Court was not entitled to independently reweigh the evidence, rather was obligated to provide only substantial evidence review. (Doc. 24, at 13-14). At this stage, however, the Court no longer defers to the findings of the ALJ. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) ("'The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and

entitled to benefits.' *In our view,* that test is met here.") (emphasis added) (internal quotation omitted); *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985) ("The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court."); *Koudela v. Colvin,* No. 3:12–CV–00475, 2013 WL 5465960, at *9 (M.D. Pa. 2013) ("The decision of the Commissioner should be reversed with the direction that benefits be awarded to Koudela, as the Court finds that substantial evidence does not support the decision that Koudela is not disabled under the Act."). After determining that reversal of the ALJ's decision is warranted, the Court no longer affords the ALJ the deference due during its review of the ALJ's decision to deny benefits. *See Morales,* 225 F.3d at 320. The Court's review of the record to determine whether "substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits" is left to the sole discretion of the Court. *See Morales,* 225 F.3d at 320. Still, the Court shall address the reasons the Commissioner gives for why substantial evidence should indicate the claimant is not disabled.

First, the Commissioner avers that Pearson's attempts to find full-time work demonstrate an ability to work full-time. (Doc. 24, at 4, 7, 11). However, this Court has determined that a claimant may be disabled despite attempts to find work, noting that failed work attempts coinciding with medical problems may support a finding of disability. *Rieder v. Apfel,* 115 F. Supp. 2d 496, 505 (M.D. Pa. 2000); *see Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Here, Pearson's treating neurologist has opined that Pearson is unable to work, due in part to his inability to transport himself to work and because his sleep/wake schedule is disrupted. (Doc. 8-9, at 60). Pearson's failed attempts to find full-time work do not constitute substantial evidence that he is not disabled.

Second, the Commissioner focuses the Court's attention on Pearson's statement that he would not fall asleep during the day "as long as he was involved with something." (Doc. 24, at 4, 7-8, 13, 19). However, at the same time as making this statement, Pearson reported that he takes daily naps for one or one and a half hours. (Doc. 8-9, at 28). Pearson's treating neurologist opined that he required intermittent naps during working hours for his safety. (Doc. 8-9, at 67). Without evidence of how Pearson would fare absent his daily naps, the Court will not deviate from the opinion of his treating neurologist. As such, it was not clear error for the Court to decline to find this statement dispositive. (Doc. 21, at 16-17).

Third, the Commissioner points to Pearson's ability to play golf and drive for "several hours at a time." (Doc. 24, at 4). These activities do not require Pearson to go eight hours (the length of a workday) without sleeping. Indeed, the Commissioner supports his statement that Pearson is able to drive for "several hours at a time" with Dr. Blumenfeld's statement that if Pearson has to drive over *four* hours, he gets sleepy and his wife takes over. (Doc. 24, at 4; Doc. 8-9, at 47). As such, these facts do not support a finding that Pearson is not disabled.

Fourth, the Commissioner asserts that the Court's use of Dr. Royer's report was problematic because the report "shows that it was mostly written about something else, namely, depression and its related cognitive impact." (Doc. 24, at 8). The Commissioner bases this assertion on the premise that the report "talks about novel problem-solving skills, organization, planning, memory, and attention, with depression that could 'mute his cognitive abilities in many other domains, particularly relative to his previous skill levels.'" (Doc. 24, at 8). According to the Commissioner, because Dr. Royer's conclusions did not have to do with Pearson falling asleep or being unable to stay awake during the daytime, they did not implicate his narcolepsy. (Doc. 24, at 8). However, narcolepsy is known to

affect memory and attention, and cause "mental fogginess." *Narcolepsy: Daily Life*, Division

of Sleep Medicine at Harvard Medical School,

http://healthysleep.med.harvard.edu/narcolepsy/living-with-

narcolepsy/dailylife#:~:text=Narcolepsy%20can%20present%20challenges%20to,events%2

C%20and%20plans%20for%20activities (last modified Feb. 21, 2018). As the Commissioner

acknowledges, Dr. Royer noted "significant impairment" in "novel problem-solving skills,

organization and planning," and wrote that "this difficulty impacts some aspects of memory

and attention as well." (Doc. 8-9, at 331). Significantly, after describing the above

impairments, Dr. Royer opined, "*Moreover*, he is suffering from a significant level of

depression, which is sufficient to mute his cognitive abilities in many other domains." (Doc.

8-9, at 331) (emphasis added). The use of the word "moreover" indicates that Dr. Royer did

*not* attribute the prior impairments to depression as averred by the Commissioner. (Doc. 24,

at 8). Narcolepsy does not only cause an individual to fall asleep; impairments to memory

and attention are consistent with a narcolepsy diagnosis and so it was not clear error for the

Court to recognize Dr. Royer's report as bearing relevance to Pearson's narcolepsy.[5] (Doc.

21, at 17-18).

   Finally, the Commissioner highlights Pearson's ability to maintain full-time work from

July 2014 through July 2015. (Doc. 24, at 2, 9, 11). The Commissioner avers that Pearson's

ability to work full-time should have precluded a determination that he was disabled during

the time periods he was not employed full-time. (Doc. 24, at 2, 9, 11). This period comes more

than three years after Pearson's alleged onset date, and more than two years after Dr. Royer's

---

[5] For this reason, the Commissioner's assertion that Pearson's termination from Home Depot for forgetting a bag of cash at his register was unrelated to his narcolepsy is also without merit. (Doc. 24, at 11-12)

opinion that Pearson "would have considerable difficulty in the area of full time competitive employment" and Dr. Michalek's opinion that Pearson required intermittent naps during working hours. (Doc. 8-6, at 2; Doc. 8-9, at 65, 67). Additionally, Pearson was hired full-time in July 2014, and forgot the bag of money – the offense for which he was fired – on June 29, 2015. (Doc. 8-10, at 386-87, 389). Pearson was terminated from full-time employment for an error he made after less than one year, the misconduct being consistent with narcolepsy. *See Narcolepsy: Daily Life*, Division of Sleep Medicine at Harvard Medical School, http://healthysleep.med.harvard.edu/narcolepsy/living-with-narcolepsy/dailylife#:~:text=Narcolepsy%20can%20present%20challenges%20to,events%2C%20and%20plans%20for%20activities (last modified Feb. 21, 2018) ("Narcolepsy can present challenges to daily living: in addition to sleepiness, people with narcolepsy may experience mental fogginess, poor memory, and hallucinations."). For these reasons, it was not clear error for the Court to order the award of benefits notwithstanding Pearson's 2014-2015 work history. (Doc. 21).

After determining that the ALJ's decision should be reversed, the Court inherited the responsibility of determining whether the administrative record of the case was fully developed and whether substantial evidence in the record as a whole indicated that Pearson was disabled and entitled to benefits. *See Morales*, 225 F.3d at 320. The Court performed an examination of the entire record and, after noting the Vocational Experts' testimony that Pearson's nap requirement could not be accommodated, determined that substantial evidence indicated Pearson was disabled and entitled to benefits. (Doc. 21, at 27-28). The Court's decision included no manifest errors of law or fact. *See Harasco Corp.*, 779 F.2d at 909.

**IV.**     **CONCLUSION**

For the foregoing reasons, Defendant's motion for reconsideration (Doc. 24) is denied.

An appropriate Order follows.


Dated: March 25, 2021                           *s/ Karoline Mehalchick*
                                                _____
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**